1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9 | AUDRA DAWSON,

Case No. 1:15-cv-00800-LJO-EPG-HC

10 |          Petitioner,

FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS

11 |    v.

12 | D.K. JOHNSON,

13 |          Respondent.

14

15       Petitioner Audra Dawson is a state prisoner proceeding *pro se* with a petition for writ of

16 habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following

17 grounds for relief: (1) the state courts' violation of the Sixth, Eighth, and Fourteenth

18 Amendments; (2) ineffective assistance of appellate counsel; (3) violation of <u>Brady v. Maryland</u>,

19 373 U.S. 83 (1963); (4) instructional error; and (5) violation of <u>Apprendi v. New Jersey</u>, 530

20 U.S. 466 (2000).

21       For the reasons discussed herein, the undersigned recommends denial of the petition for

22 writ of habeas corpus.

23 **I.**

24 **BACKGROUND**

25       On December 21, 2011, Petitioner was convicted by a jury in the Fresno County Superior

26 Court of second-degree robbery. (CT[1] 213, 221–22). Petitioner admitted allegations that she

27 suffered two prior felony convictions that qualified as strikes under California's Three Strikes

28 

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on October 19, 2015. (ECF No. 20).

1

Law and as serious felony conviction enhancements under California Penal Code section 667(a)(1). Petitioner also admitted that she served two separate prison terms for prior felony convictions within the meaning of California Penal Code sections 667.5(a) and another separate prison term within the meaning of section 667.5(b). (CT 223; 9 RT[2] 1302–07). Petitioner was sentenced to twenty-five years to life plus ten years. (CT 236). On July 30, 2013, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Dawson, No. F064491, 2013 WL 3947818, at *5 (Cal. Ct. App. July 30, 2013). The California Supreme Court summarily denied the petition for review on October 2, 2013. (LDs[3] 18, 19).

Subsequently, Petitioner filed a state petition for writ of habeas corpus in the Fresno County Superior Court, which denied the petition on October 30, 2014. (LDs 20, 21). Petitioner then filed a state habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition on March 4, 2015. (LDs 22, 23). Thereafter, Petitioner filed a petition for review and state habeas petition in the California Supreme Court, which denied the petitions on April 22, 2015 and April 29, 2015, respectively. (LDs 24–27).

On May 27, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent filed an answer to the petition, and Petitioner filed a traverse. (ECF Nos. 16, 21).

## II.

## STATEMENT OF FACTS[4]

***Prosecution Case***
In the afternoon on October 8, 2011, (October 8), Elizabeth Tapia was walking with her three-year-old son along Olive Avenue in Fresno, on her way to the motel where she and her husband worked, when appellant and appellant's codefendant, James Hill, approached her. Tapia had seen the couple in the area before but did not know them.

Appellant began talking to Tapia, telling her that Jesus loved her and complimenting her son. As appellant was talking, Hill, who was standing "off to the side" a few feet away, loudly asked Tapia how much money she had in her possession. Tapia had been holding her son's hand, but she let go when Hill spoke, turned to face him, and told him she did not have any money. She then

---

[2] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on October 19, 2015. (ECF No. 20).
[3] "LD" refers to the documents lodged by Respondent on October 19, 2015. (ECF No. 20).
[4] The Court relies on the California Court of Appeal's July 30, 2013 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

turned back to look at appellant and saw that appellant had picked up her son and was holding him with two hands, under his arms. Tapia told appellant she did not have any money and told appellant to put her son down. Tapia testified that appellant, in a loud and angry tone of voice, "told me to give her all the money I had or else I wouldn't see my son."

At that point, appellant "turned and held [the boy] toward the traffic." The boy was struggling and trying to kick appellant. Tapia was "scared." Fearing that appellant "would throw [her son] and he'd get ran over [*sic*] or something," Tapia told appellant, "I'll give you whatever I have, just let him go." Appellant then put the boy down and Tapia grabbed him and held him close, as appellant "started to pat [Tapia] down." Appellant reached into one of Tapia's pants pockets and removed $40. Hill told appellant to "hurry up," and she and Hill left the scene, "[a]lmost running in a fast way."

According to police testimony, appellant and Hill were arrested at a nearby gas station a short time later.

*Defense Case* [5]
On the afternoon of October 8, appellant and her husband, James Hill, were walking along Olive Avenue when appellant saw a woman approximately 25 feet away walking "swiftly" across the street with her son, who "tripped at the curb." Appellant, seeing that the boy was trying not to cry, approached the woman and asked if she (appellant) could say something to the boy. The woman consented, and appellant told the boy not to be angry at his mother and that God loved him. Appellant then patted the boy on the head, told the woman "maybe you should slow down a little bit" and that God loves her, and gave the woman a hug. The woman "hugged [appellant] back" and thanked her, and appellant "went about [her] way."

Appellant did not pick up the boy or "swing [him] in any way into traffic." She neither asked the woman for money nor did she get any money from her.

Dawson, 2013 WL 3947818, at *1–2 (footnote in original).

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

---

[5] The "Defense Case" portion of our factual summary is taken from appellant's testimony.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

4

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Richter</u>, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. <u>See</u> <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2276 (2015); <u>Johnson v. Williams</u>, 568 U.S. 289, 297 n.1 (2013); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not <i>de novo</i> review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

### A. First Ground for Relief

In her first ground for relief, Petitioner asserts violations of the Sixth, Eight, and Fourteenth Amendments and denial of a fair trial. (ECF No. 1 at 4, 15).[6] Specifically, Petitioner argues that the trial court erroneously denied a motion for new trial and erroneously allowed the prosecutor to engage in misconduct when the prosecutor stated on the record that "Petitioner is the poster child for the Three Strikes Law."[7] (ECF No. 1 at 4, 15–16).

### 1. Procedural Default

Respondent argues that this Court is precluded from reaching the merits of the claims regarding the denial of a new trial and prosecutorial misconduct because the state court imposed a procedural bar. (ECF No. 16 at 32, 39). A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730–32. However, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).

The claims regarding the denial of a new trial and prosecutorial misconduct were raised

---

[6] Page numbers refer to the ECF page numbers stamped at the top of the page.
[7] The Court notes that in the first ground for relief, Petitioner also refers to juror confusion over instructions and the trial court's refusal to allow the defense to use Elizabeth Tapia's criminal background, as reflected in the California Law Enforcement Telecommunication System ("CLETS") report, for impeachment purposes. (ECF No. 1 at 15–16). The Court will address those issues in sections IV(B) and IV(C), infra.

in all of Petitioner's state habeas petitions. The Fresno County Superior Court denied relief on procedural grounds in a reasoned decision. (LD 21). The California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." Ylst, 501 U.S. at 804. Therefore, the Court will "look through" the California Court of Appeal and California Supreme Court's summary denials and examine the decision of the Fresno County Superior Court. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying habeas relief on these claims, along with five other claims, the Fresno County Superior Court stated:

> Initially, the Court notes that Petitioner has attached a proof of service indicating that she served her petition by mail on the Fresno Superior Court and the Office of the Attorney General. However, as a party to the action, Petitioner cannot properly serve her petition for writ of habeas corpus. (Code Civ. Proc., § 1013a, subd. (1).) Furthermore, Petitioner has failed to attach a proof of service of her petition on the Office of the District Attorney of Madera County, where she is currently confined. Consequently, Petitioner has failed to attach a proper proof of service of her petition for writ of habeas corpus. (Pen. Code, § 1475.)
>
> Nevertheless, even had she attached a proper proof of service, the Court finds that Petitioner has failed to state a prima facie case for relief. With respect to her first seven contentions, the Court finds that Petitioner has failed to present any justification for her failure to raise these issues on appeal.
>
>> The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.
>
> (*In re Dixon* (1953) 41 Cal. 2d 756, 759; see *In re Harris* (1993) 5 Cal. 4th 813, 829.) Therefore, since Petitioner's contentions could have been raised on appeal and Petitioner has not demonstrated an exception to the general rule, the Court finds that Petitioner has failed to present a viable claim for habeas corpus relief with respect to her first seven claims.

(LD 21 at 2–3).

The Fresno County Superior Court clearly and expressly stated that its decision rests on a state procedural bar, the Dixon rule, which the Supreme Court has recognized as "adequate to bar federal habeas review." Johnson v. Lee, 136 S. Ct. 1802, 1806 (2016). Accordingly, the Court finds that the Fresno County Superior Court applied an independent and adequate state procedural rule, and Petitioner has procedurally defaulted these claims. A petitioner, however,

may obtain federal review of a defaulted claim by demonstrating either "(1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting Coleman, 501 U.S. at 750)). Here, Petitioner has not shown cause for the default and prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. In any event, the claims fail on the merits, as discussed below.

### 2. Denial of Motion for New Trial

Petitioner appears to argue that the trial court erred when it when it denied a defense motion for a new trial, which was based on a juror's note regarding the jury foreman's conduct during deliberations. (ECF No. 1 at 15). However, "not every incident of juror misconduct requires a new trial. 'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'" Anderson v. Calderon, 232 F.3d 1053, 1098 (9th Cir. 2000) (quoting United States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974)), overruled on other grounds by Osband v. Woodford, 290 F.3d 1036, 1043 (9th Cir. 2002).

Here, before the jury reached a verdict, Juror Number 4 wrote a note to the trial court stating:

> I don't feel that our foreman is giving the group a fair chance to speak out opinions or decisions. Not all jurors are in agreement with the questions the foreman is asking. Some of us are feeling rushed into having to make a decision because our foreman wants a verdict today!

(CT 212). The trial court read the note to the attorneys and stated, "I simply want to tell [the jurors] there's no rush, please respect—and I'll reread the instructions—please respect each other and take all the time individually that you feel is necessary. Each of you must independently weigh the evidence and reach a verdict for yourselves." (7 RT 1128). The court then called out the jury and issued the following instruction:

> In response to the second note, I'm reading and emphasizing this further portion of the jury instruction, but when I say emphasize, I don't mean that is more important than any jury instruction.

> It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict if you can. Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong, but do not change your mind just because other jurors disagree with you. Keep an open mind and openly exchange your thoughts and ideas about this case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. Please treat one another courteously. Your role is to be an impartial judge of facts, not to act as an advocate for one side or the another [*sic*].
>
> Simply put, there's no time limit on your deliberations.

(7 RT 1130).

After the verdict was returned, the court polled the jury and found the verdict was unanimous. (7 RT 1133–36). Thereafter, Petitioner joined in her codefendant's motion for new trial. (Supp. CT[8] 9–17; 11 RT 1501–02). The trial court denied the motion, reasoning:

> The note does not indicate anything more than what appears to be perhaps extensive deliberation, as well as deliberation that were not affected by, but were made part of what one juror said "some frustration." There didn't appears to be anything in the note that is unusual. There didn't appear anything in the note that is anything beyond what one would expect in deliberations. After the note was red [*sic*], the Court brought the jurors in, cautioned them. It read a jury instruction that is contained in the transcript.
>
> After that note, there were no follow-up notes. There was no request from the jurors for any additional guidance. No further expressions of frustration or any type of undue force or any other type of emotion from the jury room. Therefore, I find it is not a sufficient showing for either the jury disclosure information. There is simply nothing to show that there is any misconduct rising to a prima facia showing or for motion for a new trial. On the same basis, each of those motions are denied.
>
> For those reasons, as I said, the Court previously addressed these issues. I have no reason to believe any further followup is necessary. There is simply nothing to indicate there is any misconduct based upon the information provided. Those motions are denied; therefore, we'll proceed to sentencing today.

(11 RT 1503–04).

---

[8] "Supp. CT" refers to the Supplemental Clerk's Transcript on Appeal lodged as Document Number 3 by Respondent on October 19, 2015. (ECF No. 20).

"A jury is presumed to follow its instructions," and Petitioner has failed to overcome this presumption. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). After receiving Juror Number 4's note, the trial court reinstructed the jury regarding its obligation to deliberate. As the trial court noted, there were no additional juror notes or issues brought to the court's attention after it addressed Juror Number 4's note. Further, the court polled the jury and confirmed the verdicts were unanimous. Petitioner has not established that she was denied a fair trial. Accordingly, Petitioner is not entitled to habeas relief on the ground that the trial court erroneously denied the motion for new trial.

### 3. Prosecutorial Misconduct

Petitioner asserts that the prosecutor engaged in misconduct at the sentencing hearing when the prosecutor stated that "Petitioner is the poster child for the Three Strikes Law." (ECF No. 1 at 16). A prosecutor's improper comments violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). As "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citations omitted). The Supreme Court has instructed that "remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 12 (1985).

The statement at issue occurred during the sentencing hearing in regard to whether the court should exercise its discretion to strike a prior strike conviction. The prosecutor stated in pertinent part:

> The People strongly oppose any *Romero* against Ms. Dawson in this case. I note the first of her two convictions are both robberies. Yes, they are 1992 and 1993. Yes, they are long time ago; however, in 1994, when she picked up her third felony conviction, the 11352, she was sentenced to 25 years to life on that case. Only on appeal, did that case come back. She was actually given a chance at probation on that case after the appeal. She blew that

> chance on probation and was ultimately sentenced to ten years in prison.
>
> She did not get out of prison, Your Honor, until 2007. So despite the fact that those cases are long ago, she is only been free from prison since 2007. In that case, that is because she timed out on those offenses. Now, in 2011, she picked up another robbery. This is, again, a serious and violent case. You heard the testimony. She picked up this woman's child and threated [*sic*] her for money.
>
> I take this case very seriously. And, frankly, I think it would be an abuse of Your Honor's discretion to strike a strike in this case. She is the poster child for the three-strikes law. She is by definition—statutory definition a career criminal. In this case, Your Honor, I believe the full 25 to life, plus the 10 year enhancement, plus the one year for 36 to life as recommended by the probation department is appropriate.

(11 RT 1518–19).

Petitioner has not established that the prosecutor's comment amounted to a denial of Petitioner's right to a fair trial. "The California Supreme Court has ruled that for a trial court to depart from the sentencing scheme of the 'Three Strikes' law, 'the defendant [must] be deemed [to be] outside the scheme's spirit, in whole or in part,' in light of 'the particulars of his background, character, and prospects' and the nature and circumstances of his present felonies and strikes." People v. Strong, 87 Cal. App. 4th 328, 331 (Cal. Ct. App. 2001) (quoting People v. Williams, 17 Cal. 4th 148, 161 (Cal. 1998)). Therefore, it was appropriate for the prosecutor to address whether Petitioner was inside or outside the spirit of the Three Strikes Law, and as noted by Respondent, "[b]y arguing that Petitioner was the poster child of the Three Strikes Law, the prosecutor was necessarily arguing that Petitioner did not fall outside the spirit of the Three Strikes Law." (ECF No. 16 at 39).

Further, Petitioner has not established that she was prejudiced by the prosecutor's comment. The trial court explicitly stated the reasoning for Petitioner's sentence: "The one thing that I, frankly, did not take into account that [the prosecutor] highlighted was the defendant's behavior after getting released on the 25-to-life, and then a subsequent violation of parole. So for those reasons, I will not *Romero* the prior, but I will not give 36 to life either." (11 RT 1521).

Accordingly, Petitioner is not entitled to habeas relief based on prosecutorial misconduct for the comment that Petitioner was the poster child for the Three Strikes Law.

**B. Third Ground for Relief**

In her third ground for relief, Petitioner asserts various claims related to Elizabeth Tapia, the victim and a prosecution witness, and Tapia's criminal background. (ECF No. 1 at 5). Petitioner appears to argue: (1) a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); (2) the trial court's erroneous refusal to allow the defense to impeach Tapia with her California Law Enforcement Telecommunication System ("CLETS") report; and (3) prosecutorial misconduct based on use of perjured testimony. (ECF No. 1 at 18). Respondent contends Petitioner's claim, as it appears in her federal petition, is not exhausted; the state court reasonably rejected the <u>Brady</u> claim as it was presented in state court; and in any event, Petitioner is not entitled to habeas relief on the ground that the trial court erred in refusing to allow the defense to impeach the victim with her criminal background. (ECF No. 16 at 47–51).

    1. <u>Exhaustion</u>

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." <u>Duncan</u>, 513 U.S. at 365; <u>Gray v. Netherland</u>, 518 U.S. 152, 162–63 (1996). <u>See also</u> <u>Davis v. Silva</u>, 511 F.3d 1005, 1009 (9th Cir. 2008) ("Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'") (citations omitted).

Petitioner filed a state habeas petition in the California Supreme Court that asserted a Brady violation with respect to Tapia's CLETS report. Petitioner argued that the jury should have had knowledge of Tapia's CLETS report in order to fairly weigh her testimony. (LD 24). In the section for "Supporting cases, rules, or other authority," Petitioner listed, *inter alia*, the Fourteenth Amendment and Brady v. Maryland, 373 U.S. 83 (1963). (LD 24).

Based on the foregoing, the Court finds that Petitioner's Brady claim and due process claim regarding the trial court's refusal to allow the defense to impeach Tapia with her CLETS report were fairly presented to the California Supreme Court, and thus, are exhausted. On the other hand, Petitioner's prosecutorial misconduct claim is unexhausted. Regardless, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

### 2. *Brady* Violation

The Brady claim was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court denied relief in a reasoned decision. (LD 21). The California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying the Brady claim, the Fresno County Superior Court stated:

Tenth, Petitioner argues that the prosecution's failure to investigate the victim's criminal history as reflected in the victim's CLETS report violated *Brady v. Maryland* (1963) 373 U.S. 83. In support of this contention, Petitioner argues that the victim's CLETS report would have contradicted the victim's assertion that she had never had contact with law enforcement thereby undermining the victim's credibility at trial.

Under *Brady* and its progeny, the prosecution has a Fourteenth Amendment duty to disclose to a criminal defendant all evidence that is favorable to the defendant, that is material either to guilt or punishment, and that is in the possession of the prosecutor or an investigative agency to which the prosecutor has reasonable access. (*In re Sassounian* (1995) 9 Cal.4th 535, 543–45; *People v. Kasim* (1997) 56 Cal.App.4th 1360, 1379–80.) However, evidence is not suppressed in violation

of *Brady*, "unless the defendant was actually unaware of it and could not have discovered it 'by the exercise of reasonable diligence.'" (*People v. Salazar* (2005) 35 Cal.4th 1031, 1049.) Additionally, the prosecution has "no general duty to seek out, obtain, and disclose all evidence that might be beneficial to the defense." (*Ibid*.) Furthermore, a *Brady* violation only occurs if there is a reasonable probability that the outcome of the criminal proceeding would have been different had the evidence been disclosed to the defense. (*Ibid*. at p. 1050.)

In the present case, the Court finds that Petitioner has failed to establish that the prosecution was under any obligation under *Brady* to conduct a further investigation of the victim's criminal record as reflected in the victim's CLETS report. In addition, Petitioner has failed to establish either that she was unaware of the information contained in the victim's CLETS report or that there is a reasonable probability that the result of her criminal proceeding would have been any different had the prosecution provided this information to her. Therefore, Petitioner has failed to establish a viable claim for habeas corpus relief with respect to her tenth contention.

(LD 21 at 5–6.)

A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. Brady, 373 U.S. at 87. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976). The duty to disclose under Brady also extends to evidence that the defense might use to impeach prosecution witnesses. United States v. Bagley, 473 U.S. 667, 676 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

To establish that a Brady violation undermines a conviction, Petitioner must show: "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281–82 (1999)). "In determining whether evidence has been suppressed for purposes of Brady, our court has asked whether the defendant 'has enough information to be able to ascertain the supposed Brady material on his own.' If so, there's no Brady violation." Milke v. Ryan, 711 F.3d 998, 1017 (9th Cir. 2013) (quoting United States v. Aichele, 941 F.2d

761, 764 (9th Cir. 1991)). However, if "a defendant doesn't have enough information to find the Brady material with reasonable diligence, the state's failure to produce the evidence *is* considered suppression." Milke, 711 F.3d at 1018.

The record establishes that defense counsel was provided with Elizabeth Tapia's CLETS report, which had information regarding Tapia's previous contacts with law enforcement. (2 RT 135–41). Tapia had been arrested for a misdemeanor theft, but the CLETS report did not specify if that arrest resulted in a conviction. Therefore, the defense had enough information to be able to ascertain the supposed Brady material on its own, and there was no Brady violation. As the state court noted, the prosecution did not have a duty under Brady to conduct *further* investigation of the victim's criminal record as reflected in the report.

Thus, the Court finds that the state court's rejection of Petitioner's Brady claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on her Brady claim.

3.  Due Process

Petitioner asserts that the trial court erred in refusing to allow the defense to impeach Tapia with her CLETS report, in violation of due process. (ECF No. 1 at 16, 18). This claim was raised in Petitioner's state habeas petition that was summarily denied by the California Supreme Court. (LDs 24, 25). Here, there was no reasoned opinion on the due process claim, and the Court presumes that the claim was adjudicated on the merits. See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Accordingly, the Court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then [the Court] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of

1    [the Supreme] Court." Id. at 102.

2    "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in

3    the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution

4    guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane

5    v. Kentucky, 476 U.S. 683, 690 (1986) (citations omitted) (quoting California v. Trombetta, 467

6    U.S. 479, 485 (1984)). However, a "defendant's right to present relevant evidence is not

7    unlimited," and "state and federal rulemakers have broad latitude under the Constitution to

8    establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's

9    right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes

10   they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock

11   v. Arkansas, 483 U.S. 44, 56 (1987)). The Supreme Court "[o]nly rarely ha[s] . . . held that the

12   right to present a complete defense was violated by the exclusion of defense evidence under a

13   state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 509 (2013) (per curiam).

14   In Nevada v. Jackson, a prisoner challenged the exclusion, at trial, of evidence "showing

15   that the rape victim previously reported that he had assaulted her but that the police had been

16   unable to substantiate those allegations" based on a "state statute that generally precludes the

17   admission of extrinsic evidence of '[s]pecific instances of the conduct of a witness, for the

18   purpose of attacking or supporting the witness's credibility, other than conviction of crime.'"

19   Jackson, 569 U.S. at 506, 509 (citing Nev. Rev. Stat. § 50.085(3) (2011)). The Supreme Court

20   recognized that the Nevada statute was analogous "to the widely accepted rule of evidentiary law

21   that generally precludes the admission of evidence of specific instances of a witness' conduct to

22   prove the witness' character for untruthfulness," and declared that "[t]he constitutional propriety

23   of this rule cannot be seriously disputed." Id. at 510 (citations omitted). The Supreme Court

24   stated:

25           The admission of extrinsic evidence of specific instances of a
             witness' conduct to impeach the witness' credibility may confuse
26           the jury, unfairly embarrass the victim, surprise the prosecution,
             and unduly prolong the trial. No decision of this Court clearly
27           establishes that the exclusion of such evidence for such reasons in
             a particular case violates the Constitution.

28

1  Jackson, 569 U.S. at 511. The Court also asserted that it "has never held that the Confrontation

2  Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes."

3  Id. at 512.

4      Based on Jackson, the Court finds that the state court's denial of Petitioner's due process

5  claim with respect to the exclusion of Tapia's CLETS report for impeachment purposes was not

6  contrary to, or an unreasonable application of, clearly established federal law, nor was it based

7  on an unreasonable determination of fact. The decision was not "so lacking in justification that

8  there was an error well understood and comprehended in existing law beyond any possibility for

9  fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to

10  habeas relief on this ground.

11      4.  Prosecutorial Misconduct

12      The prosecution's knowing use of perjured testimony to obtain a conviction can violate

13  due process. Napue v. Illinois, 360 U.S. 264, 269 (1959). "Under this clearly established

14  Supreme Court precedent, the petitioner must show that (1) the testimony (or evidence) was

15  actually false, (2) the prosecution knew or should have known that the testimony was actually

16  false, and (3) that the false testimony was material." Soto v. Ryan, 760 F.3d 947, 958 (9th Cir.

17  2014). In assessing materiality, the Court must determine whether "there is 'any reasonable

18  likelihood that the false testimony could have affected the judgment of the jury.'" Id. (quoting

19  Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005)).

20      Here, Petitioner does not establish that Elizabeth Tapia's testimony was actually false.

21  Rather, Petitioner merely asserts that Tapia was "an admitted liar" with "a questionable past and

22  harboring a strong dislike for African Americans" and notes, without elaboration, "the numerous

23  inconsistencies in Tapia's testimony." (ECF No. 1 at 18). As it is "perfectly clear" that Petitioner

24  does not raise a colorable prosecutorial misconduct claim with respect to the alleged knowing

25  use of perjured testimony, the Court may deny the claim on the merits pursuant to 28 U.S.C. §

26  2254(b)(2).

27  **C.  Instructional Error**

28      In her first and fourth grounds for relief, Petitioner asserts errors with respect to the

instructions given to the jurors. Petitioner contends that the trial court erred in giving instructions that confused the jury. Specifically, Petitioner argues that the trial court erred in failing to give an instruction on unanimity. (ECF No. 1 at 15, 19). Respondent contends that: Petitioner's instructional error claim is not cognizable in federal habeas; this Court is precluded from reaching the merits of the claim because the state court imposed a procedural bar; the claim is barred pursuant to <u>Teague v. Lane</u>, 489 U.S. 288, 299–316 (1989); and in any event, the claim fails on the merits. (ECF No. 16 at 25).

1. <u>Procedural Default</u>

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. <u>Coleman</u>, 501 U.S. at 729–30. The instructional error claim was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court denied relief on procedural grounds in a reasoned decision. (LD 21). The California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." <u>Ylst</u>, 501 U.S. at 804. Therefore, the Court will "look through" the California Supreme Court's summary denials and examine the decision of the Fresno County Superior Court. <u>See</u> <u>Brumfield</u>, 135 S. Ct. at 2276; <u>Ylst</u>, 501 U.S. at 806.

As discussed in section IV(A)(1), *supra*, the Fresno County Superior Court clearly and expressly stated that its decision rests on a state procedural bar, the <u>Dixon</u> rule, which the Supreme Court has recognized as "adequate to bar federal habeas review." <u>Lee</u>, 136 S. Ct. at 1806. As the Fresno County Superior Court applied an independent and adequate state procedural rule, Petitioner has procedurally defaulted the instructional error claim. Further, Petitioner has not shown cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. In any event, the claim fails on the merits, as discussed below.

2. <u>Analysis</u>

Petitioner asserts that the trial court gave instructions that confused the jury and

specifically contends that the court should have given an instruction on unanimity. An "unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.'" People v. Russo, 25 Cal. 4th 1124, 1135 (Cal. 2001) (quoting People v. Perez, 21 Cal. App. 4th 214, 223 (Cal. Ct. App. 1993)). As there were not two or more discrete criminal events at issue in Petitioner's case, an unanimity instruction would not have been appropriate. Instead, this Court construes Petitioner's argument to be that the trial court should have given an instruction or clarified to the jury that the verdicts of Petitioner and her codefendant must match. See Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)) ("[T]he district court must construe *pro se* habeas filings liberally.").

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71–72 (1991). A federal court's inquiry on habeas review is not whether the challenged instruction "is undesirable, erroneous, or even 'universally condemned,'" "but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 146, 147 (1973). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). "It is well established that the [ailing] instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). This instructional error standard also applies to ambiguous and omitted instructions. Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001). The Supreme Court has stated that "[t]he significance of the omission of . . . an instruction may be evaluated by comparison with the instructions that were given." Henderson v. Kibbe, 431 U.S. 145, 156 (1977). The Supreme Court also noted that an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id. at 155.

In the instant case, the trial court correctly instructed that the jury consider the evidence and charges for each defendant separately. California courts have held such an instruction is

required, noting "[i]t is fundamental that when more than one defendant is prosecuted in an action, the jury must consider separately the guilt or innocence of each defendant. This is a general principle of law openly and closely connected with the facts of any case involving multiple defendants." People v. Mask, 188 Cal. App. 3d 450, 457 (Cal. Ct. App. 1986). See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Petitioner is not entitled to the same verdict as her codefendant, and verdicts that treat codefendants in a joint trial inconsistently are not a sufficient reason for setting aside said verdicts. Harris v. Rivera, 454 U.S. 339, 345 (1981) (citing United States v. Dotterweich, 320 U.S. 277, 279 (1943)). Accordingly, Petitioner is not entitled to habeas relief based on instructional error.

### D. Sentencing Errors

In her fifth ground for relief, Petitioner asserts errors with respect to her sentence. Petitioner contends that: (1) the trial court illegally enhanced her sentence by considering her prior 1991, 1992, 1994 convictions and 2007 parole violation; (2) the trial court exceeded its authority by sentencing Petitioner to an additional ten-year enhancement with the same facts that were used to increase her sentence pursuant to the Three Strikes Law; and (3) that the state court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), by erroneously using information outside the record. (ECF No. 1 at 6, 20). Respondent argues that: a sentencing error claim is not cognizable in federal habeas; this Court is precluded from reaching the merits of Petitioner's claim because the state court imposed a procedural bar; and in any event, the Apprendi claim fails on the merits. (ECF No. 16 at 52–54).

1. Use of Prior Convictions

Petitioner's challenge regarding the use of her prior convictions to enhance her sentence was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied the petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's challenge to the trial court declining to strike a prior felony conviction, the California Court of Appeal stated:

### Additional Factual Background

Appellant was 42 years old at the time of sentencing. Prior to the instant case, she had suffered three prior felony convictions. The first was a strike conviction for second degree robbery in December 1992. She was initially placed on probation, which she subsequently violated. Her second conviction was also for second degree robbery, in May 1993. She was sentenced to prison on both counts in May 1993.

In May 1995, appellant was convicted of violating Health and Safety Code section 11352 and, initially, sentenced to 25 years to life in prison under the three strikes law. Thereafter, it appears, appellant appealed, the sentence was vacated and on remand, in February 1997, the court granted a *Romero* motion. At that point, appellant was not immediately resentenced. Rather, according to the RPO, she was released "to complete Walden House." In February 1998, a bench warrant was issued based on a failure to appear, and in June 1998 appellant was sentenced to 10 years in prison.

Subsequently, appellant was apparently released on parole, and in January 2007, according to the RPO, she violated parole and was returned to prison "To Finish [her] Term." At the sentencing hearing, the prosecutor stated appellant was released from prison in 2007.

The report of the probation officer states appellant told the officer the following. She "suffer[s] from an addiction to crack cocaine." Cocaine "became a problem for her in 1990"; she "used until the end of 1992"; and she did not use cocaine again until August 2011, when her doctor told her she had six months to live. At that point, she used crack cocaine "for three weeks straight" and then "stopped completely" in September 2011. She obtained her GED in 2004, and from 2008 to 2010 attended classes at Fresno City College. Before she was arrested for the instant offense she "volunteered at the Economic Opportunities Commission as a life changing skill teacher," "[s]he was a sponsor at meetings, she participated in 'Bring Neighborhoods Back Together,' she was a motivational speaker, ... she ran a toy drive," and she "engaged in various other volunteer activities."

### Romero Motion

Near the outset of the sentencing hearing, the court, noting that appellant had made a *Romero* motion and that each of appellant's strikes is "essentially 20 years old," stated its "tentative" decision was to strike one of appellant's strikes and impose a prison term of 21 years, consisting of 5 years on the robbery, doubled under the three strikes law for a total of 10 years, 5 years on each of the section 667(a) enhancements and 1 year on the section 667.5, subdivision (b) prior prison term enhancement.[9]

The prosecutor urged the court to deny the *Romero* motion and impose a prison sentence of 36 years to life, consisting of 25 years to life on the instant offense, plus 5 years on each of the two prior serious felony enhancements and 1 year on

---

[9] The two section 667.5, subdivision (a) enhancements were based on the same prior convictions as the two section 667(a) enhancements, and therefore could not be imposed. (*People v. Jones* (1993) 5 Cal.4th 1142, 1150 [enhancements under §§ 667(a) and 667.5, subd. (b) cannot be applied to same prior offense].)

the section 667.5, subdivision (b) enhancement. The prosecutor conceded that appellant's strike convictions occurred "a long time ago" but noted that appellant committed another felony in 1994, received probation for that offense but "blew that chance on probation," was "ultimately sentenced to ten years in prison," and "[has] only been free from prison since 2007."

The court stated that in arriving at its tentative decision, it had not "take[n] into account" appellant's violation of probation following her third felony conviction. The court then stated it would deny the *Romero* motion, but it would strike the two prior serious felony enhancements and the three prior prison term enhancements and impose a term of 25 years to life. The court explained that a sentence of 36 years to life would not be "necessary" and that 25 years to life would be a "sufficient sentence." The court noted appellant's age—42—and, alluding to how old she would be "[a]fter serving now 25 to life in prison," stated that "almost every study ever done on this indicates" that "[a person in his or her] 60's is essentially not a criminal threat."

At that point the prosecutor interjected that the court did not have the power to strike either of the prior serious felony enhancements.[10] Shortly thereafter, the court stated, "I have already indicated on the record the reasons not to [grant the *Romero* motion]. I'm not going to go back and relitigate this." The court further stated, "The only reason I am not striking the [prior serious felony enhancements] is because apparently I have no discretion to do so." The court then imposed the sentence of 25 years to life on the substantive offense and 5 years on each of the prior serious felony enhancements. The court explained further: "I want the record to be clear that [appellant's] conduct in this case was extreme. She grabbed a child. She held a child out in traffic. I have every reason to believe the victim that that is exactly what happened.... I think [appellant] knew exactly what she was doing."

**DISCUSSION**

### *Legal Background*
A trial court has discretion to strike a prior felony conviction "in furtherance of justice." (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) In *Williams,* the California Supreme Court set forth the factors relevant to a trial court's determination of whether to do so, and to an appellate court's review of such a ruling: "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

A superior court's determination not to strike a strike is reviewable for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) "In [conducting this review], we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will

---

[10] See section 1385, subdivision (b): "This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under section 667."

not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.)

Thus, " '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.... Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in *Williams, supra,* 17 Cal.4th [at p. 161], manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony, supra,* 33 Cal.4th at p. 378.)

### Contentions and Analysis

Appellant argues that the court abused its discretion in denying her *Romero* motion. She bases this argument, in turn, on the following claims: She committed the two strike offenses during a "short" and aberrant two-year period some 20 years earlier when she was in her early 20's; in none of her three robberies did she use a weapon or physically harm anyone; all of her offenses "appear to be tied to drug addiction"; the court "fail[ed] to consider and give preponderant weight" to "aspects of appellant's circumstances" that "showed she is capable of being rehabilitated"; a sentence of 21 years, which the court could have imposed had it struck one of appellant's strikes, "would have been sufficiently harsh to punish appellant for both the present crime as well as her recidivism"; had she received a 21–year sentence, appellant would have been released from prison when she was just a few years beyond age 60, an age at which, according to the trial court, "she would most likely no longer pose a criminal threat to society"; and the court's statement that it would have stricken both section 667(a) enhancements "shows the court believed that a lesser sentence would have had a sufficient rehabilitative effect and would have been sufficiently severe to serve as adequate punishment." Appellant's challenge to the denial of her *Romero* motion is without merit.

We note first that appellant understates the seriousness of the instant offense. As the trial court noted, the instant offense was extremely serious. Although appellant did not use a weapon or inflict bodily injury, her conduct was calculated to terrify both the three-year-old victim and his mother, who could do nothing but stand by while appellant explicitly threatened her child and reinforced that threat by holding the boy out in the vicinity of onrushing traffic. (See *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1415 (*Ingram* ), disapproved on another point in *People v. Dotson* (1997) 16 Cal.4th 547, 559–560 ["Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence"].)

We acknowledge that appellant suffered her strike convictions nearly 20 years before committing the instant offense. We also recognize that at one point during the sentencing hearing before the court imposed the sentence of 35 years to life, the court expressed the view that a sentence of 36 years to life was too severe under the circumstances. But these factors, and the others cited by appellant, do

not establish that the instant case is the extraordinary one in which departure from the three strikes law sentencing scheme is compelled. All three of appellant's felony convictions resulted in prison sentences, she has violated probation and parole, and she had been free from prison for only approximately four to five years before committing the instant serious felony. Thus, appellant has demonstrated an inability to refrain from committing crimes despite past sanctions and attempts to rehabilitate.

Appellant argues that the court gave insufficient weight to some factors and undue weight to others. But as indicated above, appellant cannot prevail by showing that reasonable people could disagree as how such factors should be balanced. Although the record may indicate that this matter is within the range of cases as to which the trial court had discretion under section 1385 to strike one of appellant's strikes, nothing in the record compels an exercise of that discretion, and it was not irrational for the court to refuse to treat appellant as if she had not previously suffered two strikes. Accordingly, the court did not abuse its discretion in denying appellant's *Romero* motion.

Dawson, 2013 WL 3947818, at *2–5 (footnotes in original).

Whether the trial court abused its discretion in declining to strike one of Petitioner's prior convictions is an issue of state sentencing law that is not cognizable in federal habeas corpus. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

Accordingly, Petitioner is not entitled to habeas relief on the ground that the trial court erred in denying the request to strike one of Petitioner's prior strike convictions.

2. Ten-Year Sentencing Enhancement

Petitioner asserts that the trial court exceeded its authority by imposing a ten-year enhancement based on the same facts that were used to increase her sentence pursuant to the Three Strikes Law. (ECF No. 1 at 20). In all of her state habeas petitions, Petitioner asserted that she "did not meet criteria for 10 year enhancement." (LDs 20, 22, 24). The Fresno County Superior Court denied relief on procedural grounds in a reasoned decision. (LD 21). The

California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." Ylst, 501 U.S. at 804. Therefore, the Court will "look through" the California Supreme Court's summary denials and examine the decision of the Fresno County Superior Court. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

As discussed in section IV(A)(1), *supra*, the Fresno County Superior Court clearly and expressly stated that its decision rests on a state procedural bar, the Dixon rule, which the Supreme Court has recognized as "adequate to bar federal habeas review." Lee, 136 S. Ct. at 1806. As the Fresno County Superior Court applied an independent and adequate state procedural rule, Petitioner has procedurally defaulted this sentencing error claim. Further, Petitioner has not shown cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. In any event, the claim fails on the merits.

Whether Petitioner met the criteria for the ten-year enhancement is an issue of state sentencing law that is not cognizable in federal habeas corpus. See Corcoran, 562 U.S. at 5 ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Christian, 41 F.3d at 469 ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

To the extent Petitioner raises a double jeopardy claim with respect to imposing the ten-year enhancement based on the same facts that were used to sentence Petitioner pursuant to the Three Strikes Law, the Court finds Petitioner is not entitled to habeas relief. The double jeopardy protection against cumulative punishments "is designed to ensure that the sentencing discretion is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Ohio v. Johnson, 467 U.S. 493, 499 (1984) (citations omitted). California courts have held that the dual use of prior convictions to impose five-year enhancements and an

indeterminate sentence under the Three Strikes Law is proper. <u>Williams v. Walker</u>, 461 F. App'x 550, 554 (9th Cir. 2011) (citing <u>People v. Purata</u>, 42 Cal. App. 4th 489, 498 (Cal. Ct. App. 1996)).

Accordingly, Petitioner is not entitled to habeas relief on the ground that the trial court exceeded its authority by imposing a ten-year enhancement based on the same facts that were used to increase her sentence pursuant to the Three Strikes Law.

3. <u>Apprendi</u>

Petitioner also asserts that the trial court violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466. (ECF No. 1 at 6). This claim was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court denied relief on procedural grounds in a reasoned decision. (LD 21). The California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). As discussed in section IV(A)(1), *supra*, the Fresno County Superior Court clearly and expressly stated that its decision rests on a state procedural bar, the <u>Dixon</u> rule, which the Supreme Court has recognized as "adequate to bar federal habeas review." <u>Lee</u>, 136 S. Ct. at 1806. As the Fresno County Superior Court applied an independent and adequate state procedural rule, Petitioner has procedurally defaulted the <u>Apprendi</u> claim. Further, Petitioner has not shown cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. In any event, the claim fails on the merits.

In <u>Apprendi</u>, the Supreme Court held: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). In the instant case, the increase in Petitioner's sentence was based on her prior convictions, and thus, there was no violation of <u>Apprendi</u>. Accordingly, Petitioner is not entitled to habeas relief on this ground.

**E. Ineffective Assistance of Counsel**

In her second ground for relief, Petitioner asserts that appellate counsel was ineffective for filing a <u>Wende</u> brief rather than raising issues on appeal for review. (ECF No. 1 at 4, 17). Respondent argues that Petitioner's claim, as it appears in her federal petition, is not exhausted,

and that the state court reasonably rejected the ineffective assistance of counsel claim as it was presented in state court. (ECF No. 16 at 41).

1. Exhaustion

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Boerckel, 526 U.S. at 845; Duncan, 513 U.S. at 365; Connor, 404 U.S. at 276. To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray, 518 U.S. at 162–63. See also Davis, 511 F.3d at 1009 ("Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'") (citations omitted).

In the instant federal petition, Petitioner asserts ineffective assistance of appellate counsel for filing a Wende brief and specifies the following problems with filing a Wende brief:

> (1) It does not justice for anyone sentenced to a substantial amount of time. (2) In this case, the appeal process means the difference between dying in prison of old age or rec[e]iving a fair trial. (3) Neglecting to address the cumulative effect of any harmless errors. The severity of the sentence should have warranted additional research into viable appeal issues.

(ECF No. 1 at 17). Petitioner also filed a state habeas petition in the California Supreme Court that raised ineffective assistance of appellate counsel for submitting a Wende brief, but specified failing to raise the following issues on appeal: (1) a juror's note was grounds for a mistrial; (2) improper jury instructions; (3) the discrepancy between Petitioner's sentence and that of her codefendant; and (4) Apprendi error. (LD 24).

The Ninth Circuit has recognized that a "claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the

state courts,' or 'place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'" Dickens v. Ryan, 740 F.3d 1302, 1318 (9th Cir. 2014) (some citations omitted) (first quoting Vasquez v. Hillery, 474 U.S. 254, 260 (1986); then quoting Aiken v. Spalding, 841 F.2d 881, 883 (9th Cir. 1988)). Here, the new allegations in the federal petition do not fundamentally alter the ineffective assistance of appellate counsel claim or place the case in a significantly different and stronger evidentiary posture. In fact, it appears to the Court that Petitioner presented a more cogent claim to the California Supreme Court by specifying the issues that Petitioner wished appellate counsel to raise on appeal. Accordingly, the Court finds that Petitioner's claim of ineffective assistance of appellate counsel for submitting a Wende brief was fairly presented to the California Supreme Court, and thus, is exhausted.

    2.  Strickland Legal Standard

    The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

    When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense

counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

3. Analysis

The claim of ineffective assistance of appellate counsel for submitting a Wende brief was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court denied relief in a reasoned decision. (LD 21). The California Court of Appeal and California Supreme Court summarily denied the petitions. (LDs 23, 25). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's ineffective assistance of appellate counsel claim, the Fresno County Superior Court stated:

> Ninth, Petitioner maintains that she received ineffective assistance of counsel when her appellate attorney submitted a Wende brief on her behalf. In support of this contention, Petitioner argues that her attorney was ineffective when she failed to raise the arguments that Petitioner had requested that she raise in a letter that Petitioner sent to her counsel. Specifically, Petitioner maintains that her attorney was ineffective in failing to argue that: (i) the trial court's jury instructions were improper, (ii) a note that Juror No. 4 had sent to the trial court was grounds for declaring a mistrial, and (iii) that the trial court's sentence was improper in light of the fact that Petitioner's co-defendant was convicted of a less serious offense.
>
> In order to demonstrate ineffective assistance of counsel, Petitioner must allege facts showing that (1) her counsel's representation fell below an objective standard of reasonableness, and (2) that her defense suffered prejudice as a result.

(*Strickland v. Washington* (1984) 466 U.S 668, 690–92.) In the present case, the Court finds that Petitioner has failed to establish that she received ineffective assistance of counsel on appeal because she has failed to demonstrate a reasonable probability that the result of her appeal would have been any different had her appellate counsel raised the three issues that Petitioner had requested that she address (*In re Cox* (2003) 30 Cal.4th 974, 1019–20 [stating that court may dispose of ineffective assistance of counsel claim if petitioner has not demonstrated sufficient prejudice without deciding if counsel's performance was deficient].) Consequently, Petitioner has failed to present a viable claim for habeas corpus relief with respect to her ninth contention.

(LD 21 at 4–5).

First, the Court notes that Petitioner's appellate counsel did not file a <u>Wende</u> brief. In fact, appellate counsel raised the issue of whether the trial court abused its discretion when it declined to strike of one Petitioner's prior serious felony convictions. (LD 15). Additionally, based on the analysis in sections IV(A)(2), IV(C)(2), and IV(D), *supra*, Petitioner has not established that there is "a reasonable probability that . . . the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. As discussed above, the trial court's jury instructions were proper, the trial court's denial of the motion for new trial was not erroneous, and the trial court did not err with respect to Petitioner's sentence. Therefore, under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the superior court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on her ineffective assistance of counsel claim, and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

1   Rules of Practice for the United States District Court, Eastern District of California. Within

2   **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

3   written objections with the court and serve a copy on all parties. Such a document should be

4   captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

5   objections shall be served and filed within fourteen (14) days after service of the objections. The

6   assigned United States District Court Judge will then review the Magistrate Judge's ruling

7   pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within

8   the specified time may waive the right to appeal the District Court's order. Wilkerson v.

9   Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th

10  Cir. 1991)).

11
12  IT IS SO ORDERED.

13      Dated:   **June 18, 2018**              /s/ _Erica P. Grosjean_
14                                              UNITED STATES MAGISTRATE JUDGE